# NEIL McCOULL

## v.

## S. HERZBERG.

*Landlord and Tenant—Sewer Gas—Recovery of Rent—Lease—Conditions—Fraudulent Representations.*

1.   A landlord does not insure that nothing exists touching the premises in question that will interfere with the health or comfort of his tenant nor is he bound to repair unless the lease so provides.

2.   The law does not imply a contract on the part of a landlord that premises demised are tenantable or that they will continue to be so during the term.

3.   An action at law to recover rent covenanted to be paid by lease under seal, can not be met by the defense that the lessee was induced to execute the lease by fraudulent representations as to the character or surroundings of the premises.

[Opinion filed October 23, 1889.]

IN ERROR to the Circuit Court of Cook County; the Hon. ROLLIN S. WILLIAMSON, Judge, presiding.

Messrs. ABBOTT, OLIVER & SHOWALTER, for plaintiff in error.

If A, by deceitful representations as to the sanitary condition of a dwelling house, induces B to take a lease of the same, the latter, on discovering the real condition of the house, may elect either to repudiate the lease and vacate, or to retain his leasehold and use the premises for any purpose not inconsistent with the covenants or restrictions contained in the lease. In the former case all covenants become void; in the latter all covenants are of course binding.   In either case B may have his action for the deceit.   If he has repudiated the lease, the measure of damages may be nothing more than the expense of moving in and out; if he has elected to abide by the lease, the measure of damages may be nothing more than the difference in value between what the leasehold estate was actually

worth, and what it would have been worth had the false representation been true—in other words, the cost of such repairs as would make the house answer the representation.   If, after discovering the falsity of the representation B continues to hold and occupy the premises, this is an election to abide by the lease, and B is, of course, held to all covenants made by him, including the covenant to pay rent.   Morey et al. v. Pierce, 14 Ill. App. 91; Arnold v. Clark, 45 N. Y. (Superior Court) 253; Drew v. Beal, 62 Ill. 165; Flynn v. Hatton, 43 Howard's Pr. 333; Walker v. Swayzee, 3 Abbott's Pr. 136; Sedgwick on Damages, 7th Ed., Vol. 1, 606; Vol. 2, 557; Benjamin on Sales, 3d Am. Ed., 436, 437, 441.

If we are to assume such a state of facts as would have given Herzberg an action for deceit against McCoull, then, since Herzberg discovered the fraud in November, but continued thereafter to hold the premises and pay rent, it must be said that he elected to stand by the lease.

A landlord is under no implied obligation to repair; nor where premises are let for a particular purpose—where the use is restricted by covenants or conditions—is there any implied warranty by the landlord of fitness for such purpose. A tenant can not, therefore, relieve himself from his obligation to pay rent by vacating.   1 Washburn on Real Property, 5th Ed., 576; Taylor's Landlord and Tenant, 7th Ed., 330; Foster v. Peyser, 9 Cush. 243; Hart v. Windsor, 12 M. & W. 68; Cleaves v. Willoughby, 7 Hill, 83; Wheeler v. Crawford, 86 Penn. St. 327; Purcel v. English, 86 Ind. 34; Cowen v. Sunderland, 14 N. E. Reporter, 118.

Mr. C. C. Strawn, for defendant in error.

A provision in a lease, that " the lessor shall not be liable for any repairs on the premises during the term, the buildings now being in perfect order," has reference only to the condition of the building as edifices in perfect repair, and not to the condition of the surroundings, or the purity of the air in the vicinity, either then or at any future time.   Wood's Landlord and Tenant, p. 609, Sec. 378; Foster v. Peyser, 9 Cush. (Mass.), 242.

It is a general principle of law, well understood by the pro-

fession, that "any actual expulsion of the tenant, or intentional disturbance by the landlord, or by any other person acting by his authority, or by virtue of a legal right vested in them in any manner, which so seriously disturbs the tenant's possession as to compel an abandonment of the premises by him, or which deprives him of their beneficial enjoyment, amounts to an eviction, and the rent is suspended from the time of such disturbance," and the question to be determined is, did the existence of this deleterious stench, the poisonous sewer gas in the house in question, as shown by the testimony in this case, amount to an eviction?

"If the landlord himself creates a nuisance upon, or in the vicinity of the premises, it amounts to an eviction, and this is so whether the nuisance arises from an act of omission or commission." Wood's Landlord and Tenant, page 803, note 1.

Where a landlord permitted the drains in his cellar adjoining the leased premises to get out of repair, so that the adjoining premises became untenantable, it was held sufficient to constitute an eviction. Alger v. Kennedy, 49 Vt. 109; Wood's Landlord and Tenant, p. 803, note 1, and cases there cited. In Cowie v. Goodwin, 9 C. & P. 65, the tenant proved, in an action for use and occupation, that the wall of the privy gave way, and the filth from it flowed into the kitchens, so as to render them uninhabitable. Lord Denman said : "I shall ask the jury whether these premises were unfit for proper and comfortable occupation, and if the defendant had *bona fide* quitted the apartments as soon as he could procure others;" and the jury having answered both questions in the affirmative, the plaintiff was non-suited, and on motion for a new trial for misdirection the rule was refused. Wood's Landlord and Tenant, p. 804, in note 3, commencing on p. 803.

On p. 805 of Wood's Landlord and Tenant, it is said : "If the landlord lets only part of a building—as in the case at bar the first flat and basement—and permits the part retained by him to fall into such a state of disrepair as to render the part occupied by the tenant untenantable, either by dilapidation or because the premises are thereby rendered unhealthy, as if he permits a drain to remain stopped up, so as

to emit unwholesome gases or unpleasant stenches, this act of omission amounts to an eviction, and the tenant may give up possession."

The same author says, continuing on same page: "So, too, if the landlord fraudulently conceals the facts that a building is unfit for habitation because of a deleterious stench proceeding from an unknown cause, it has been held equivalent to an eviction." "But a distinction is made in this respect between the letting of a building that is unfit for occupation by reason of a cause affecting the health of the occupants, and one that merely produces annoyance and discomfort." Wood's Landlord and Tenant, p. 805.

GARNETT, J.    McCoull leased certain premises to Herzberg for a dwelling, the term beginning September 10, 1885, and ending April 30, 1887. The tenant took possession the first day of the term, and occupied the premises until a few days after the 1st day of January, 1886. In November, 1885, an offensive smell was discovered in the house, which continued to appear at intervals, until Herzberg felt obliged to vacate the premises on that account, and he did remove therefrom in the following January. He paid the rent to January 1, 1886, but refused to pay any rent accruing thereafter.

The action below was for the installments of rent, falling due for January, February and March, 1886. The sole defense interposed was the offensive smell, which was alleged to have made it necessary for the defendant to leave the house. It is conceded that the smell came from the sewer in the demised premises. Neither 'artifice, contrivance nor fraudulent representation is charged against the plaintiff. He acted in entire good faith, having had the premises, including the sewer, thoroughly overhauled and repaired just before the letting to defendant, and had no reason to believe that any defect existed, which would interfere with the health or comfort of any occupant of the building. The landlord in such case is not an insurer, unless the lease by its terms makes him such. There is nothing in the lease to the defendant which affects the question here made. It is the settled doctrine

that there is no implied contract on the part of the landlord that the demised premises are tenantable, or that they will continue so during the term. Blake v. Ranous, 25 Ill. App. 486. Nor is the landlord bound to repair unless he has expressly agreed to do so in the lease or contract of hiring. The defendant might have protected himself against the consequences now in sight, by agreement with the plaintiff, but the court can not make such an agreement for the parties.

The judgment is in conflict with the views here expressed, and for that reason is reversed and the cause remanded.

*Reversed and remanded.*

### Upon Petition for Rehearing.

[Opinion filed March 24, 1890.]

GARNETT, J. The doctrine of this court is that an action at law to recover rent covenanted to be paid by lease under seal, can not be met by the defense that the lessee was induced to execute the lease by fraudulent representations as to the character or surroundings of the premises. They merely relate to the nature of the consideration which the lessee is to receive.

The question was decided in Johnson v. Wilson, opinion filed in this court, December 2, 1889, after mature consideration, and the rule was afterward affirmed in Little v. Dyer, at the same term. As the judgment in this case contravenes that rule, it must be reversed and the cause remanded.

*Reversed and remanded.*